UNITED STATES of America ex. rel. Jeffrey THISTLETHWAITE and Jeffrey Thistlethwaite, Plaintiffs–Appellants,

v.

DOWTY WOODVILLE POLYMER, LIMITED, Richard Walker, and Michael W. Thompson, Defendants–Appellees.

Nos. 280, 519, Dockets 96–6089(L), 96–6093.

United States Court of Appeals, Second Circuit.

Argued Oct. 2, 1996.

Decided Jan. 16, 1997.

Jonathan A. Willens, Assistant United States Attorney, New York City (Mary Jo White, United States Attorney, Gideon A. Schor, Steven M. Haber, Assistant United States Attorneys, New York City, on the brief), for Plaintiff–Appellant United States.

Thomas E. Engel, New York City (James G. McCarney, Engel & McCarney, New York City, on the brief), for Plaintiff–Appellant Thistlethwaite.

Donald B. Ayer, Washington, D.C. (Eric Grant, Jones, Day, Reavis & Pogue, Washington, D.C., Linda Imes, Richards Spears Kibbe & Orbe, New York City, on the brief), for Defendants–Appellees.

Before: KEARSE, LEVAL, and CABRANES, Circuit Judges.

KEARSE, Circuit Judge:

Plaintiffs United States of America, *et al.*, appeal from a judgment of the United States District Court for the Southern District of New York, Louis L. Stanton, *Judge*, dismissing their amended complaint ("complaint") against defendants Dowty Woodville Polymer, Limited ("Dowty"), *et al.*, for recovery principally under the False Claims Act, 31 U.S.C. §§ 3729–3733 (1994) ("FCA" or the "Act"). The district court ruled that, under § 3732(a), it lacked subject matter jurisdiction to entertain plaintiffs' FCA claims because none of the defendants resides, transacts business, or can be found in the Southern District of New York, and none of the alleged acts proscribed by the FCA occurred therein. On appeal, plaintiffs contend that the district court erred in viewing § 3732(a) as a subject matter jurisdiction provision, rather than as merely a venue or personal jurisdiction provision. We agree that § 3732(a) does not address sub-

ject matter jurisdiction, and we thus vacate the judgment and remand for further proceedings.

## I. BACKGROUND

Dowty, an English company whose only places of business are in England, is a manufacturer of polymer products, including wing slot seals ("wing seals") used in variable geometry aircraft, sometimes called "swing wing" aircraft. Beginning in the early 1980s, Dowty entered into a series of 11 contracts to develop and supply, as subcontractor to Rockwell International Corp. ("Rockwell") in El Segundo, California, wing seals for B1–B aircraft, for which Rockwell was prime contractor to the United States Air Force ("Air Force"). Beginning in 1985, Dowty entered into a series of six contracts with the Air Force at McClellan Air Force Base in Sacramento, California, to retrofit the Air Force's F–111 aircraft with wing seals. Beginning in 1989, Dowty entered into a series of 12 contracts with the Air Force at Tinker Air Force Base in Oklahoma City, Oklahoma, to supply spare wing seals for the Air Force's B1–B aircraft. Plaintiffs estimate that from 1984 through 1994, pursuant to these wing seal contracts, "thousands of seals ... were provided by defendant Dowty Woodville at a cost to the United States Air Force in excess of $52 million." (Complaint ¶ 13.)

Defendants Richard Walker and Michael Thompson, British subjects residing in the United Kingdom, are employees of Dowty. At the times complained of, Walker was a project manager or a director and general manager, and Thompson was a commercial manager or a financial director. Plaintiff Jeffrey Thistlethwaite was employed as a business manager at Dowty from August 1989 until April 1992.

In May 1994, Thistlethwaite commenced the present action on behalf of the United States government, under the *qui tam* provisions of the FCA, alleging that Dowty and others had conspired to defraud the United States, its departments, agencies, and contractors in connection with the sale of wing seals. In early 1995, the United States joined the action and filed the present complaint naming the present defendants. The

complaint alleges that Thistlethwaite, as business manager of Dowty, learned that Dowty had improperly inflated the elements of various cost categories in its proposals to and contracts with the Air Force and Rockwell, resulting in unlawful overcharges to the government, believed to be in excess of $20 million. Plaintiffs asserted that the overcharges violated the FCA, 31 U.S.C. § 3729(a)(1)–(3), and the Truth in Negotiations Act, 10 U.S.C. § 2306a (1994), and they asserted additional claims of breach of contract, unjust enrichment, and payment made under mistake of fact.

FCA § 3732(a) provides in part that an action to enforce the FCA "may be brought in any judicial district in which the defendant or, in the case of multiple defendants, any one defendant can be found, resides, transacts business, or in which any act proscribed by section 3729 occurred." Defendants, pointing to this language and noting that Dowty operates its business only in England, that the individual defendants are residents of England, and that the situses of the contracts at issue here were California and Oklahoma, moved to dismiss the action on various grounds, including lack of personal and subject matter jurisdiction, and forum non conveniens. In opposition, plaintiffs did not contest defendants' factual premises but argued that § 3732(a) does not deal with subject matter jurisdiction.

In a Memorandum and Order dated January 15, 1996, reported at 911 F.Supp. 130, the district court granted defendants' motion to dismiss for lack of subject matter jurisdiction, stating that "section 3732 limits jurisdiction as well as venue. Indeed, it is the only grant of jurisdiction in the False Claims Act." 911 F.Supp. at 131. The court stated that

[t]he legislative history of the 1986 amendments to the False Claims Act confirms that the provision in section 3732(a) ... was intended to limit jurisdiction as well as venue.

In 1986, the House of Representatives and the Senate each passed separate bills amending various provisions of the False Claims Act, including its jurisdictional provision. H.R. 4827, which passed the House

on September 6, 1986, contained the jurisdictional provision which was ultimately passed by both bodies and signed into law, and is now codified in section 3732. The House Report on H.R. 4827 stated that the provision which is now section 3732 limits jurisdiction:

This section provides that jurisdiction for an action brought pursuant to this Act will be brought in the judicial district where any defendant can be found, resides, transacts business, or in which any act alleged as a violation is alleged to have occurred.

H.Rep. No. 660, 99th Cong., 2d Sess. 33 (1986).

The Senate also intended to limit jurisdiction. The Senate Report, explaining its proposed version, described it as "basically a form of long-arm statute with many familiar counterparts in State law." S.Rep. No. 345, 99th Cong., 2d Sess. 32 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5297.

Section 3732 is therefore not only a venue statute, but also a geographically-limited grant of subject-matter jurisdiction.

911 F.Supp. at 131–32 (footnote omitted).

Having concluded that it lacked subject matter jurisdiction over plaintiffs' FCA claims, the district court dismissed the action without addressing the other grounds of defendants' motion.

## II. DISCUSSION

On appeal, plaintiffs contend that the district court erred in dismissing the action for lack of subject matter jurisdiction. They contend that the court had subject matter jurisdiction over their FCA claims under 28 U.S.C. § 1331 (1994), which vests in federal district courts subject matter jurisdiction to hear suits brought under federal law, and under 28 U.S.C. § 1345 (1994), which authorizes federal district courts to hear cases in which the United States is a plaintiff. They contend that § 3732(a) of the FCA governs only personal jurisdiction and venue. For the reasons that follow, we agree that § 3732(a) does not govern subject matter jurisdiction.

## A. General Principles of Federal Court Jurisdiction

 As a general matter in the federal judicial system, the concepts of subject matter jurisdiction, personal jurisdiction, and venue address different concerns limiting the authority of a court to entertain a given case. Subject matter jurisdiction is concerned with the kinds of cases the federal district courts are empowered to decide. *See, e.g., United States v. Morton,* 467 U.S. 822, 828, 104 S.Ct. 2769, 2773, 81 L.Ed.2d 680 (1984) ("Subject-matter jurisdiction defines the court's authority to hear a given type of case. . . ."). Personal jurisdiction, in contrast, is concerned with the relationship of a given defendant to the particular geographic area in which a case is brought. *See, e.g., id.* (limitations on personal jurisdiction "protect[ ] the individual interest that is implicated when a nonresident defendant is haled into a distant and possibly inconvenient forum"). Venue is concerned with the relationship of the defendants and the events to the particular judicial district in which a case is brought. Like personal jurisdiction, venue relates to location and "concern[s] the place where judicial authority may be exercised." *Lindahl v. Office of Personnel Management,* 470 U.S. 768, 793 n. 30, 105 S.Ct. 1620, 1634 n. 30, 84 L.Ed.2d 674 (1985) (internal quotation marks omitted); *see* 4 C. Wright & A. Miller, *Federal Practice and Procedure* § 1063, at 224 (2d ed. 1987) (venue "relates to the place at which an action may properly be brought and determined").

For example, the subject matter jurisdiction provisions of Title 28 having broadest application are those granting the district courts power to entertain cases based on federal questions, *see* 28 U.S.C. § 1331, and to entertain cases between citizens of diverse states, *see id.* § 1332. Section 1331 provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." *Id.* § 1331. Section 1332 provides generally that "[t]he district courts shall have original jurisdiction" of civil actions where the amount in controversy exceeds a certain sum and the parties are not citizens of the same state. *Id.* § 1332.

These provisions specify that the district courts have "jurisdiction" to decide the types of cases specified therein.

In contrast, the general federal venue provisions set out in 28 U.S.C. § 1391 specify, for the principal types of cases over which the district courts have subject matter jurisdiction, the "judicial district[s]" in which an "action . . . may . . . be brought." *Id.* §§ 1391(a), (b), (e), (f). Subsection (b), for example, provides that

[a] civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

*Id.* § 1391(b). The venue provisions do not confer or deny jurisdiction; they assume that the court in question has subject matter jurisdiction, and they simply limit the locations in which the action may be brought.

Specific procedural provisions in substantive federal statutes sometimes have their own jurisdictional and venue provisions, and the courts have generally taken care to distinguish one type of provision from the other. For example, § 27 of the Securities Exchange Act of 1934 ("Securities Exchange Act") provides in relevant part that

[t]he district courts . . . shall have exclusive jurisdiction of violations of this chapter. . . . Any criminal proceeding may be brought in the district wherein any act or transaction constituting the violation occurred. Any suit or action to enforce any liability or duty created by this chapter . . . may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business. . . .

15 U.S.C. § 78aa (1994). Only the first of the sentences quoted above deals with subject matter jurisdiction; "[t]he second sen-

tence and the [quoted] portion of the third deal with venue...." *Leasco Data Processing Equipment Corp. v. Maxwell,* 468 F.2d 1326, 1340 (2d Cir.1972). Similarly, § 12 of the Clayton Act provides that

> [a]ny suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business....

15 U.S.C. § 22 (1994). This provision is properly characterized as the Clayton Act's "venue provision." *Bense v. Interstate Battery System of America, Inc.,* 683 F.2d 718, 720 (2d Cir.1982); *see also Banana Distributors, Inc. v. United Fruit Co.,* 269 F.2d 790, 792 (2d Cir.1959) ("section 12 of the Clayton Act ... govern[s] the propriety of venue"); *Arrowsmith v. United Press International,* 320 F.2d 219, 227 (2d Cir.1963) (§ 12 governs *"venue"* (emphasis in original)). In general, substantive federal statutes need not specify the district courts' subject matter jurisdiction to entertain a claim thereunder, for such jurisdiction is conferred by § 1331's generic provision for jurisdiction over claims under the "laws ... of the United States."

### B. *The Language of § 3732(a)*

■ The FCA procedural section at issue here provides, in pertinent part, as follows:

### § 3732. False claims jurisdiction

(a) ACTIONS UNDER SECTION 3730.—Any action under section 3730 may be brought in any judicial district in which the defendant or, in the case of multiple defendants, any one defendant can be found, resides, transacts business, or in which any act proscribed by section 3729 occurred. A summons as required by the Federal Rules of Civil Procedure shall be issued by the appropriate district court and served at any place within or outside the United States.

(b) CLAIMS UNDER STATE LAW.— The district courts shall have jurisdiction over any action brought under the laws of any State for the recovery of funds paid by a State or local government....

31 U.S.C. § 3732. Section 3730, referred to in § 3732(a), deals principally with the rights

of private persons to sue on behalf of themselves and on behalf of the government to recover for false claims for payment presented to employees of the government or the armed forces.

The first sentence of § 3732(a), by its terms, limits the districts in which an FCA claim "may be brought" and is concerned principally with the location in which an action under § 3730 may be commenced. Unlike Title 28's general jurisdictional provisions and the jurisdictional provision in § 27 of the Securities Exchange Act, discussed in Part II.A. above, the first sentence of § 3732(a) does not mention "jurisdiction." Rather, like 28 U.S.C. § 1391, § 12 of the Clayton Act, and the bulk of § 27 of the Securities Exchange Act, the first sentence of § 3732(a) is a provision of the kind that typically governs only venue.

Dowty makes two principal arguments in support of its contention that § 3732(a) is on its face a limitation on subject matter jurisdiction, not just of venue, neither of which we find persuasive. First, its attempt to analogize § 3732(a) to the jurisdictional grants in other federal statutes fails because the sections of those statutes relied on by Dowty expressly speak in terms of jurisdiction. *See, e.g.,* Freedom of Information Act, 5 U.S.C. § 552(a)(4)(B) ("the district court ... has *jurisdiction* " (emphasis added)); Voting Rights Act of 1965, 42 U.S.C. § 1973*l* (b) ("[n]o court other than the District Court for the District of Columbia or a court of appeals ... shall have *jurisdiction* " (emphasis added)); Clean Water Act, 33 U.S.C. § 1321(b)(7)(E) ("such court shall have *jurisdiction* " (emphasis added)); Fresh Cut Flowers and Fresh Cut Greens Promotion and Information Act of 1993, 7 U.S.C. § 6807(b)(1) ("[t]he district courts of the United States in any district in which a person ... resides or conducts business shall have *jurisdiction* " (emphasis added)); Mohegan Nation of Connecticut Land Claims Settlement Act of 1994, 25 U.S.C. § 1775h(a) ("the United States District Court for the Southern District of Connecticut shall have exclusive *jurisdiction* " (emphasis added)); Bankruptcy Reform Act of 1994, 11 U.S.C. § 524(g)(2)(A) ("such court shall have exclu-

sive *jurisdiction*" (emphasis added)). By contrast, § 3732(a) of the FCA does not mention the district courts' jurisdiction; it merely refers to the location in which a lawsuit to enforce the Act may properly be brought.

■ Dowty also argues that § 3732(a) should be deemed to limit subject matter jurisdiction because the heading of § 3732 is "False claims jurisdiction." In general, however, "[h]eadings and titles are not meant to take the place of the detailed provisions of the [statutory] text[;] [n]or are they necessarily designed to be a reference guide or a synopsis." *United States v. Roemer*, 514 F.2d 1377, 1380 (2d Cir.1975) (quoting *Brotherhood of R.R. Trainmen v. Baltimore & Ohio R.R.*, 331 U.S. 519, 528, 67 S.Ct. 1387, 1392, 91 L.Ed. 1646 (1947)). Moreover, it is obvious that a different part of § 3732 does indeed deal with subject matter jurisdiction, for subsection (b) provides expressly that the district courts "shall have jurisdiction over any action brought under the laws of any State for the recovery of funds paid by a State or local government." 31 U.S.C. § 3732(b). Subsection (a), however, contains no mention of jurisdiction, and we decline to infer that the presence of the word "jurisdiction" in the title of the section transmutes subsection (a)'s typical venue provision into one limiting subject matter jurisdiction.

In sum, the substance and structure of § 3732(a) indicate clearly that that provision governs venue rather than subject matter jurisdiction.

### C. *The Legislative History of § 3732(a)*

The legislative history of § 3732(a) does not persuade us that Congress had an intent different from that indicated by the statutory language. When the FCA was first enacted in 1863, § 4 of the statute (hereinafter "§ 4/1863") expressly described the jurisdiction granted to the district courts to entertain claims arising under the Act. The original statute provided, in pertinent part, as follows:

[T]he several district courts of the United States, the circuit court of the District of Columbia, or any court therein to be established having general jurisdiction in civil cases, the several district courts of the

Territories of the United States within whose jurisdictional limits the person doing or committing such [prohibited] act shall be found, *shall, wheresoever such act may have been done or committed, have full power and jurisdiction to hear, try, and determine [a false claim] suit.*

Act of March 2, 1863, ch. 67, § 4, 12 Stat. 696, 698 (1863) (emphasis added). Thus, the original statute contained a provision that was not entirely clear, for by "wheresoever" Congress might have meant either "in ... any ... place in which," or "[r]egardless of the place where," *Webster's New International Dictionary* 2911 (2d ed. 1957) (defining "wherever"); *id.* at 2910 (defining "wheresoever" as "wherever"). If Congress meant that the district courts generally have the power to decide false claims suits regardless of where the prohibited act occurred, then § 4/1863 was a jurisdictional provision and arguably did not deal with venue. If instead Congress meant that the district courts have the power to decide false claims suits, but only in a place where the act occurred, then § 4/1863 governed both subject matter jurisdiction and venue. By providing that the district courts "shall ... have full power and jurisdiction," § 4/1863 gave those courts jurisdiction to entertain actions brought on claims arising under the Act; by indicating that such actions could be brought only in those districts "wheresoever such [prohibited] act may have been done or committed," § 4/1863 arguably limited venue; and by placing the "wheresoever" clause inside the jurisdictional clause and immediately after the word "shall," § 4/1863 arguably made jurisdiction and venue congruent.

There followed periodic revisions of the Act during the next century, which made modifications in the listing of courts other than the district courts but retained this arguably congruent jurisdiction-venue formulation. Thus, the FCA was reenacted as §§ 3490–3494 and 5438 of the Revised Statutes of 1874 (2d ed. 1878), with § 3491 (hereinafter "§ 3491/1874") containing the jurisdiction-venue provision. *See United States v. Bornstein*, 423 U.S. 303, 305 n. 1, 96 S.Ct. 523, 526 n. 1, 46 L.Ed.2d 514 (1976); *see also United States ex rel. Marcus v. Hess*, 317

U.S. 537, 539, 63 S.Ct. 379, 382, 87 L.Ed. 443 (1943) (noting that Rev. Stat. §§ 3490–3493 and 5438 "are parts of what was originally the Act of March 2, 1863"). A 1943 amendment also modified the list of courts referred to and renumbered the pertinent section § 3491(A) (hereinafter "§ 3491(A)/1943"), *see* Act of Dec. 23, 1943, ch. 377, 57 Stat. 608, 608 (1943); that section continued the jurisdiction-venue provision originated in § 4/1863. The 1943 provision remained in effect until 1982. Thus, from its inception until 1982, the FCA provided that "the several district courts of the United States ... shall, wheresoever such [prohibited] act may have been done or committed, have full power and jurisdiction to hear, try, and determine [a false claim] suit." *See* § 4/1863, § 3491/1874, and § 3491(A)/1943.

In addition to the above provisions, § 563 of the Revised Statutes of 1874 (hereinafter "§ 563/1874") contained general subject matter jurisdiction provisions that stated, *inter alia,* that

[t]he district courts shall have jurisdiction as follows:

. . . .

Sixth. *Of all suits for the recovery of any forfeiture or damages under section thirty-four hundred and ninety, Title "DEBTS DUE BY OR TO THE UNITED STATES;"* and such suits may be tried and determined by any district court within whose jurisdictional limits the defendant may be found.

Revised Statutes of 1874, § 563 (2d ed. 1878). Section 563/1874 thus contained jurisdiction and venue provisions that were not congruent. In this section, the district courts were given subject matter jurisdiction of false claims suits involving the government, without apparent geographic limitation; the limitation stated in § 563/1874 was placed only on venue.

In 1982, the FCA was again amended, and in a section codified at 31 U.S.C. § 3730(b)(1) (hereinafter "§ 3730(b)(1)/1982"), the Act provided, in pertinent part, as follows:

The district courts of the United States have jurisdiction of the action. Trial is in the judicial district within whose jurisdic-

tional limits the person charged with a violation is found or the violation occurs. Pub.L. No. 97–258, § 1, 96 Stat. 877, 978 (1982). Though this section was unlike prior versions of the FCA, in that it unbundled the jurisdiction and venue provisions, the 1982 statute expressly indicated that the change made by § 3730(b)(1)/1982 was one of form rather than substance, *see* Pub.L. No. 97–258, § 4(a), 96 Stat. 877, 1067 (1982).

The present version of the FCA was adopted in 1986, with Congress enacting § 3732(a) as it appears today. In § 3732(a), Congress did not use language suggesting that jurisdiction and venue were to be congruent and indeed did not mention jurisdiction at all. Nor did the statute include a provision, as had the 1982 statute, that no substantive change was intended. Although the Senate's proposed version of the new subsection would have used language similar to that of § 3730(b)(1)/1982, *see* S. 1562, 99th Cong. § 4 (1986) ("The district courts of the United States ... shall have jurisdiction over any action commenced by the United States under this section ...."), that version was rejected in favor of the proposal of the House of Representatives, whose version of § 3732(a) contained no mention of jurisdiction, *see* H.R. 4827, 99th Cong. § 6 (1986).

The congressional reports on the 1986 amendments, on which the district court relied, provide no firm basis for inferring that, while omitting any mention of jurisdiction in § 3732(a) and omitting from the statute any disclaimer of an intent to make a substantive change, Congress meant to make jurisdiction congruent with venue. As the district court noted, the House report with respect to § 3732(a) stated only that

"This section provides that jurisdiction for an action brought pursuant to this Act will be brought [*sic*] in the judicial district where any defendant can be found, resides, transacts business, or in which any act alleged as a violation is alleged to have occurred."

911 F.Supp. at 132 (quoting H.Rep. No. 660, 99th Cong., 2d Sess. 33 (1986)). Though the district court read this explanation as evincing an intent to limit subject matter jurisdiction, we think it unclear precisely what was

meant, for jurisdiction is not normally described in terms of being "brought." Contrary to the district court's interpretation, this passage would be more coherent, and would be in perfect accord with the statutory language enacted, if the words "jurisdiction for" were simply omitted from the passage—as they were from the statute itself.

The district court also inferred a Congressional intent for § 3732(a) to limit subject matter jurisdiction from a statement in the Senate Report that the Senate's proposed version was "'basically a form of long-arm statute,'" 911 F.Supp. at 132 (quoting S.Rep. No. 345, 99th Cong., 2d Sess. 32 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5297). The district court's reliance on this statement was misplaced, since long-arm statutes govern personal jurisdiction, not subject matter jurisdiction.

In sum, we see no basis in the evolution of § 3732(a) or in the legislative history of its enactment for reading into that section a limitation on the district court's subject matter jurisdiction. In arguing that § 3732(a) constitutes a geographically limited grant of subject matter jurisdiction, Dowty would have us regress to the earliest versions of the Act, in which Congress's grant of subject matter jurisdiction was arguably congruent with its limitation on venue. Even if these versions of the Act provided for congruent geographically limited jurisdiction and venue, seeds of the abandonment of such congruence were sown with the enactment of § 563/1874, which was a forerunner of § 1331, the general federal question jurisdiction section, *see* 28 U.S.C.A. § 1331 (Historical and Statutory Notes, Revision Notes and Legislative Reports (noting that § 1331 was in part "derived from R.S. §[ ] 563")); and all mention of jurisdiction was· eliminated in § 3732(a). We conclude that § 3732(a) does not limit the district court's subject matter jurisdiction.

### D. *Other Matters*

■ As discussed in Part II.A. above, § 1331 of Title 28 gives the district courts subject matter jurisdiction of "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

In addition, the district courts are given subject matter jurisdiction, "[e]xcept as otherwise provided by Act of Congress," of all "civil actions, suits or proceedings commenced by the United States." *Id.* § 1345. Under either § 1331 or § 1345, the district court had subject matter jurisdiction of the federal claims asserted in the present action. *See, e.g., United States ex rel. Lindenthal v. General Dynamics Corp.,* 61 F.3d 1402, 1405 (9th Cir.1995) (noting that "[t]he district court had federal question jurisdiction under 28 U.S.C. § 1331" for an action under the FCA), *cert. denied,* — U.S. —, 116 S.Ct. 1319, 134 L.Ed.2d 472 (1996).

The district court, having concluded that it lacked subject matter jurisdiction, did not reach the other grounds of defendants' motion to dismiss. We decline to address those issues for the first time on appeal, and we remand to the district court for further proceedings.

The district court also dismissed plaintiffs' common-law claims, apparently declining to exercise supplemental jurisdiction over them because of its dismissal of all of the federal claims. In light of our reinstatement of the federal claims, we also vacate the dismissal of the common-law claims.

## CONCLUSION

The judgment of the district court dismissing the complaint is vacated, and the matter is remanded for further proceedings not inconsistent with this opinion. The costs of this appeal shall abide the ultimate outcome of the action.