320 F.3d 285
 COMMITTEE TO STOP AIRPORT EXPANSION, Pat Trunzo, Jr., Edward Gorman, Stephan Grossman & Pat J. Trunzo, III, Petitioners,
v.
FEDERAL AVIATION ADMINISTRATION & Jane Garvey, Respondents.
 No. 01-4181.
 United States Court of Appeals, Second Circuit.
 Argued: September 9, 2002.
 Decided: February 11, 2003.
 
 Albert M. Ferlo, Jr., Akin Gump Strauss Hauer & Feld, L.L.P. (Sheila D. Jones, on the brief), Washington, D.C., for Petitioners.
 Stanley N. Alpert, Assistant United States Attorney, Eastern District of New York, (Alan Vinegrad, United States Attorney, Deborah B. Zwany, Assistant United States Attorney, on the brief), for Respondents.
 Before: JACOBS and POOLER, Circuit Judges, and BAER, District Judge.*
 POOLER, Circuit Judge.
 
 
 1
 Petitioners oppose the possible expansion of the East Hampton Airport ("Airport"). The Federal Aviation Administration ("FAA") approved an airport layout plan ("ALP") for the Airport on August 20, 2001. Petitioners filed this action challenging the order under 49 U.S.C. § 46110, which grants the circuit courts exclusive jurisdiction to review certain FAA orders. Finding that Section 46110(a) grants jurisdiction only for review of orders issued pursuant to Part A, and that the authority to approve an ALP derives from Part B, we dismiss this petition for lack of jurisdiction.
 
 BACKGROUND
 
 2
 An ALP shows current and proposed terminals, runways, and other structures at an airport. Its primary significance is that an airport needs an ALP approved by FAA in order to receive federal funds for construction and improvement. 49 U.S.C. § 47107(a)(16).
 
 
 3
 For the past several years, the town of East Hampton ("Town") has carried out various construction projects at the East Hampton Airport. The Airport construction has led to some controversy in the community. In 1989, FAA approved an ALP, under which some construction took place and some federal funding was granted. FAA approved a new ALP submitted by the Town Board in 1994. More construction, also funded in part by the federal government, took place under that ALP.
 
 
 4
 However, from 1994 to 2001, the Committee argued in state court, and later to the FAA, that the Town Board had failed to approve the 1994 ALP in the proper manner. As a result of the Committee's efforts, in 2001, the FAA chose to invalidate the 1994 ALP because FAA believed that the ALP was "invalid for the purpose of complying with criteria under the Airport Improvement Program." At the time of the invalidation, the Town Board was working on a new ALP. FAA offered the Town three choices: (1) pass a resolution approving the 1994 ALP properly; (2) approve a new ALP; or (3) take no action, allowing the prior 1989 ALP to become the ALP of record. Later, FAA discovered it no longer had the 1989 ALP in its files.
 
 
 5
 The Town Board, deciding to use the 1989 ALP until it was able to approve a new one, re-signed a copy of the 1989 ALP and sent it to FAA. On August 20, 2001, FAA approved this ALP on the condition that no federal funds would be awarded until after satisfactory environmental review. Certain residents of East Hampton who live near the Airport brought this petition to test the revival of the 1989 ALP. Petitioners include a group opposed to expansion of the Airport, the Committee to Stop Airport Expansion ("the Committee"), as well as several individuals who reside near the Airport.
 
 
 6
 Petitioners challenge FAA's approval of the ALP, arguing that the approval violated the National Environmental Policy Act ("NEPA") because no environmental review preceded the approval. Petitioners also claim that the reinstitution of the 1989 ALP was not permitted under the FAA's own regulations and therefore, was a violation of the Administrative Procedures Act ("APA"). FAA responded by questioning the suit's ripeness and petitioners' standing. FAA also addressed the merits of petitioners' claims.
 
 
 7
 However, discerning that our jurisdiction under Section 46110 was questionable, at oral argument we asked parties to submit supplemental letter briefs on that issue. Also at oral argument, petitioners informed us that they were aware that there was a potential problem with our jurisdiction, although it was not disclosed in their briefs. Petitioners explained that they had filed the petition in an abundance of caution, since Section 46110 only grants sixty days in which to file and they did not wish to miss the deadline. Petitioners further explained that in related proceedings in district court in the District of Columbia, FAA had challenged the district court's jurisdiction because of Section 46110's exclusive grant of jurisdiction to the circuit courts. Although petitioners may have convincingly explained their reasons for filing their petition, they offered no reason for failing to mention the issue or the cases in which the Ninth Circuit found it lacked jurisdiction under similar circumstances, except to claim that they believed that jurisdiction was proper.
 
 
 8
 In the letter briefs on jurisdiction, the parties switched positions, with FAA urging that Section 46110 did indeed grant jurisdiction, although dismissal was still proper for the other reasons it had advanced. On the other hand, the Committee now asks us to dismiss its own petition for lack of jurisdiction under Section 46110.
 
 DISCUSSION
 
 9
 Petitioners make various challenges to FAA's order under NEPA and the APA. FAA contests whether petitioners' challenges are ripe and whether petitioners have standing. FAA's brief also addresses the merits of petitioners' arguments. However, because we find that we lack jurisdiction to review this order, we reach none of these matters, and instead dismiss. We join the Ninth Circuit, which has issued two persuasive opinions finding that Section 46110 does not grant jurisdiction to review orders issued under Part B. See City of Los Angeles v. FAA, 239 F.3d 1033, 1035 (9th Cir.2001); City of Alameda v. FAA., 285 F.3d 1143, 1145 (9th Cir. 2002); see also Anagnost v. Administrator, FAA, No. 97 C 4375, 1997 WL 792978, at *4 n. 6 (N.D.Ill.Dec.22, 1997).
 
 
 10
 In interpreting a statutory provision, we look first to the language of the statute itself. See, e.g., Auburn Hous. Auth. v. Martinez, 277 F.3d 138, 143 (2d Cir.2002). Section 46110 of Title 49 allows "a person disclosing a substantial interest in an order issued by ... the Administrator of the Federal Aviation Administration with respect to safety duties and powers... under this part [to] apply for review of the order by filing a petition for review" in the appropriate Circuit Court of Appeals. 49 U.S.C. § 46110(a) (emphasis added). The judicial review provision is found in Part A (entitled "Air Commerce and Safety") of the Aviation Subtitle of Title 49, Transportation. Part B (entitled "Airport Development and Noise") includes the provision which grants FAA the authority to approve ALPs. 49 U.S.C. § 47107(a)(16). Thus, the plain language of Section 46110 strongly supports the conclusion that we lack jurisdiction. The specific reference to "safety duties and powers" further strengthens this interpretation of the text.
 
 
 11
 Moreover, the structure of the Aviation Subtitle supports the conclusion that we lack jurisdiction. As the Ninth Circuit noted, Part B has its own specific provisions granting review of limited types of orders issued under that Part. City of Los Angeles, 239 F.3d at 1034 n. 3. For example, Section 47106 allows "[a] person adversely affected by an order of the Secretary withholding [grant] approval" to obtain review in the court of appeals. 49 U.S.C. § 47106(d)(3). It is noteworthy that the provision does not grant jurisdiction in the courts of appeals for review of all orders under Section 47106, which gives the Secretary power to approve a project grant application, but only for review of those orders withholding grant approval. That Congress made such a limited grant of jurisdiction in a particular Part B provision supports the conclusion that Section 46110's general grant of jurisdiction only applies to orders under Part A. See also 49 U.S.C. § 47111(d)(3) (allowing "[a] person adversely affected by an order of the Secretary withholding a payment" under a project grant agreement to seek expedited review in the appropriate court of appeals, but not granting jurisdiction for other types of orders under Section 47111). Other provisions in Section B also grant expedited jurisdiction in the courts of the appeals for particular types of orders. See 49 U.S.C. § 47129(c)(5) (allowing "[a]ny party to the dispute" to seek expedited review of the Secretary's resolution of disputes concerning airport fees); 49 U.S.C. § 47532 (granting review of certain actions involving aircraft noise level compliance and the Secretary's waiver of compliance requirements). To accept the government's interpretation would make these specific grants of jurisdiction in Part B redundant. We disfavor an interpretation of a statute that renders statutory language superfluous. See, e.g., Connecticut ex rel. Blumenthal v. Dep't of the Interior, 228 F.3d 82, 88 (2d Cir.2000).
 
 
 12
 In attempting to counter the plain meaning of the statutory text, FAA argues that "the larger administrative action taken by the [FAA] — of which the conditional re-approval of the [ALP] is but one interim aspect — is based in part on FAA authority under Part A of Subtitle VII of Title 49." Specifically, FAA claims that ALP re-approval has already required an airspace safety review under 49 U.S.C. § 40103 and that further safety review will be necessary at a later stage. FAA cannot rely on Section 40103, a "General Provision" with the title "Sovereignty and the use of airspace," to transform ALP approval into an order under Part A. See, e.g., United States ex rel. Thistlethwaite v. Dowty Woodville Polymer, Ltd., 110 F.3d 861, 866 (2d Cir.1997) (noting that headings and titles do not override clear statutory text). This reading stretches the language of 46110 beyond permissible limits. A person challenging an ALP does not become a "person disclosing a substantial interest" in an order issued under Part A, merely because airport development eventually leads to air safety review. Rather, an ALP approval is a quintessential part of "airport development." Moreover, acceptance of the government's interpretation would lead to the obliteration of the distinction between Part A (Air Commerce and Safety) and Part B (Airport Development and Noise), since almost all of the FAA's duties will lead to safety reviews eventually. By placing "Airport Development" and "Air Commerce and Safety" in different Parts, Congress distinguished between the two types of agency power. We should not interpret the statute in a way that erases that distinction.
 
 
 13
 The government also relies on three cases that held that Section 46110's predecessor statute conferred jurisdiction on the circuit courts to review orders issued in part under Chapter 31, the predecessor of Part B. Although these cases dealt with 49 U.S.C.App. § 1486, the predecessor of Section 46110, we address them.
 
 
 14
 In Sutton v. Department of Transportation, we relied on National Parks & Conservation Ass'n v. FAA and Suburban O'Hare Comm'n v. Dole in finding jurisdiction to review an ALP and certain funding grants under that ALP. Sutton, 38 F.3d 621, 625 (2d Cir.1994) (citing National Parks, 998 F.2d 1523, 1527-28 (10th Cir. 1993) and Suburban O'Hare Comm'n, 787 F.2d 186, 192-93 (7th Cir.1986)). In finding jurisdiction in Sutton, this Court noted that a substantial part of the action arose under Chapter 20, predecessor to Part A, because the power to approve an ALP fell under that chapter. Id.
 
 
 15
 In National Parks, the Tenth Circuit found jurisdiction to review the FAA's approval of the construction, operation, and funding of an airport. 998 F.2d at 1528. It explained that although the "determinations were made under statutes other than the FAA Act, all were taken under the FAA's organic statute and in regard to the FAA's basic mission: the regulation of the nation's air transport system." Id. As noted above, we reject this reasoning because it ignores the distinction that Congress has drawn between Parts A and B.
 
 
 16
 In Suburban O'Hare, the Seventh Circuit found jurisdiction because FAA's order approving an ALP had explicitly relied on provisions in both Chapters 20 and 31. 787 F.2d at 192. In the order, the FAA drew on four sources of authority, three of which fell under Chapter 20. Id. at 193. The case at hand is distinguishable, since the FAA did not cite any particular source of authority in its approval, and since we find that the approval of the ALP here clearly falls under the heading of airport development.
 
 
 17
 We need not determine whether Sutton and the other cases were wrong in finding that ALP approval was an order issued pursuant to Chapter 20. Because of changes in the language of the provision granting jurisdiction, Sutton and the other cases do not mandate a finding of jurisdiction in the instant case. Congress has reorganized Title 49 since Sutton, National Parks, and Suburban O'Hare were decided. More importantly, Congress added language to the statute that convinces us that Section 46110 only grants jurisdiction to review orders taken pursuant to Part A authority. The Sutton court interpreted a version of the statute that read:
 
 
 18
 Any order, affirmative or negative, issued by the Board or Secretary of Transportation under this chapter ... shall be subject to review by the courts of appeals of the United States or the United States Court of Appeals for the District of Columbia upon petition, filed within sixty days after the entry of such order, by any person disclosing a substantial interest in such order.
 
 
 19
 49 U.S.C. App § 1486(a) (1994).
 
 Section 46110 currently reads:
 
 20
 [A] person disclosing a substantial interest in an order issued by the Secretary of Transportation (or the Under Secretary of Transportation for Security with respect to security duties and powers designated to be carried out by the Under Secretary or the Administrator of the Federal Aviation Administration with respect to aviation safety duties and powers designated to be carried out by the Administrator) under this part may apply for review of the order by filing a petition for review in the United States [courts of appeals].
 
 
 21
 49 U.S.C. § 46110 (2002) (emphasis added). The new reference to safety duties convinces us that Congress fully intended to limit the grant of jurisdiction to orders issued pursuant to Part A, with its focus on safety, and to maintain a distinction between the various parts of the aviation subtitle. The addition of the new statutory language also leads us to conclude that we are not bound by Sutton and its interpretation of the predecessor statute. Section 46110 only allows a person with a substantial interest in an order issued pursuant to Part A to file a petition in this Court.
 
 
 22
 Although we are not bound by Sutton's particular determination that the authority to approve an ALP derives in substantial part from Part A, we do note that we otherwise approve the reasoning in Sutton. If some substantial part of a petitioner's claim concerns an order under Part A, then the circuit courts have exclusive jurisdiction over the entire claim to avoid bifurcation of litigation. However, in this case, the link between Part A and the petitioner's claims involving FAA's approval of the ALP is too tenuous. In Sutton, this Court explicitly found that jurisdiction was proper because "FAA's decision was made in substantial part pursuant to Chapter 20 of the Act." 38 F.3d at 625. Here, FAA's order falls directly under Part B and "airport development," and any connection to the air commerce and safety provisions of Part A is incidental at best. However, we do not rule out the possibility that there may be FAA orders that involve the exercise of authority deriving from both Parts A and B, and note that we would have jurisdiction to review such an order.
 
 
 23
 In its letter briefs, FAA also raises the specters of (1) bifurcation and multiplication of claims; (2) unnecessary litigation due to challenges to the same FAA actions being divided between circuit courts and district courts; (3) the forum determined not by the nature of the FAA action but by how petitioners plead their case; and (4) contravention of Congress's intent to expedite these challenges because of statutes of limitations increased well beyond the sixty days allowed by Section 46110. General policy concerns do not overcome the unambiguous meaning of a statute's text. See, e.g., Kruman v. Christie's Int'l PLC, 284 F.3d 384, 402 (2d Cir.2002). Nonetheless, we will briefly discuss the policy arguments to explain why we do not believe that our decision will lead to the dire consequences described by FAA.
 
 
 24
 Because we have affirmed the basic reasoning of Sutton, FAA's arguments about bifurcation and multiplication of claims and the inappropriate division of claims between circuit and district courts do not trouble us greatly. If an FAA action is taken in substantial part pursuant to Part A, jurisdiction will lie exclusively with the circuit courts. On the other hand, orders approving ALPs and other FAA actions focusing on airport development will usually involve only the exercise of Part B authority, and will thus only be reviewable in the district courts.
 
 
 25
 Similarly, FAA's argument that petitioners will have the sole power to determine the forum by how they plead their case is unconvincing. Both circuit and district courts will still look to the nature of the FAA action challenged. Here, we have not focused on how petitioners pleaded their case, but rather on the nature of the FAA's action. We find no jurisdiction under Section 46110, not because of petitioners' pleadings, but because FAA fails to persuade us that its ALP approval was an order issued under Part A rather than Part B.
 
 
 26
 Nor do we fear that our decision contravenes congressional intent as FAA claims. First, we apply the strong presumption that the plain language of a statute expresses congressional intent unless a contrary legislative intent is clearly expressed. Ardestani v. INS, 502 U.S. 129, 135, 112 S.Ct. 515, 116 L.Ed.2d 496 (1991); see also City of Los Angeles, 239 F.3d at 1036 (noting that Section 46110 "does reflect Congress's understanding of the then-current substance of the statute. This trumps any alleged contradictory understanding, particularly when that understanding is squarely at odds with the current text."). Moreover, we find it entirely reasonable for Congress to have created a system with expedited review only for those orders affecting air commerce and safety.
 
 
 27
 Petitioners now argue that their own petition should be dismissed, and given our analysis, we must do so. At oral argument, petitioners admitted they knew of the potential problems with our jurisdiction, and declined to raise these issues in their briefs. In City of Los Angeles and City of Alameda, the Ninth Circuit transferred the petitions to the district court after finding a lack of jurisdiction. However, given the excessively sharp practice of petitioners in failing to disclose the Ninth Circuit cases, we decline to transfer the cases, but instead simply dismiss the petition. Costs will be imposed upon petitioners. See Fed. R.App. P. 39(a)(1).
 
 CONCLUSION
 
 28
 For the reasons given above, we dismiss the petition for lack of jurisdiction.
 
 
 
 Notes:
 
 
 *
 The Honorable Harold Baer, Jr., of the United States District Court for the Southern District of New York, sitting by designation